1917.]    Opinion of Court below—Opinion of the Court.

would place on every steam railroad the burden of proving, in every case where a horse was startled by a steam whistle, that the use of it at that particular juncture was not negligent, but for a proper purpose, thus in effect raising a presumption of negligence against the defendant for an entirely lawful appliance."

The defendant's motion for judgment n. o. v. is therefore granted.

Verdict for plaintiff for $2,839.40.    The court subsequently entered judgment for defendant non obstante veredicto.    Plaintiff appealed.

*Error assigned,* among others, was in entering judgment for defendant non obstante veredicto.

*Victor Frey,* with him *Augustus Trask Ashton,* for appellant.

*Sharswood Brinton,* for appellee, was not heard.

PER CURIAM, February 26, 1917:

This judgment is affirmed on the opinion of the learned court below sustaining defendant's motion for judgment non obstante veredicto.

---

## Steinfield, Appellant, *v.* Epstein.

*Equity—Bankruptcy—Partnership settlement—Fraud.*

A bill in equity by the trustee of bankrupt's estate for a reopening of the settlement of partnership affairs made between the bankrupt and the defendant five years before, and for an accounting, and alleging that at the time of the settlement defendant had fraudulently concealed assets of the partnership from his partner, was properly dismissed where it appeared that the bankrupt had then no creditors, that the parties were dealing at arm's length and that each of them had equal means of knowledge of the assets of the estate.

Argued Jan. 23, 1917.   Appeal, No. 315, Jan. T., 1916, by plaintiff, from decree of C. P. No. 1, Philadelphia Co., Sept. T., 1914, No. 428, on bill in equity in case of Abraham Steinfield, Trustee in Bankruptcy of the Estate of A. Epstein, v. Samuel Epstein.   Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.   Affirmed.

Bill in equity for reopening of partnership settlement.

The facts appear in the following opinion by PATTERSON, J. :

This case came on to be heard on bill, answer, replication and proofs.

The bill in equity was filed by Abraham Steinfield, trustee in bankruptcy of the estate of A. Epstein, individually and trading as A. Epstein & Company, against Samuel Epstein.

The bill avers in substance that prior to the 28th of September, 1908, the defendant, Samuel Epstein, was engaged in the ladies' waist and dress business, with his brother, Abraham Epstein, who is now in bankruptcy, and of whose bankrupt estate present complainant, Abraham Steinfield, is trustee; that on the 28th of September, 1908, said partnership was dissolved on the basis of an inventory and appraisement whereby Abraham Epstein surrendered all his right, title and interest in the partnership, upon receiving $4,000 in cash and a credit of $1,105 on two promissory notes made by him and held by Samuel Epstein; that shortly after the dissolution of partnership Samuel Epstein, who was then engaged in business in his own name, brought suit against a number of fire insurance companies, to recover alleged losses which he claimed he sustained by reason of a fire in his place of business; that one of these suits was brought in the Court of Common Pleas No. 2, as of March Term, 1913, No. 1578, against the West Chester Fire Insurance Company; that on the trial of this case,

which took place October, 1913, the said Samuel Epstein testified under oath that there was in existence at the time of the dissolution of the partnership $53,000 worth of merchandise belonging to him, which, under his instructions, were not included in the inventory and appraisement made, on which the dissolution of partnership was based.

There is a prayer in the bill to the effect that the settlement of the partnership affairs between Abraham and Samuel Epstein be reopened; that an account be stated between the respondent and the estate of Abraham Epstein; and that Samuel Epstein be ordered and directed to pay over such part of the value of said goods and merchandise as may appear on such accounting.

In his answer the respondent, Samuel Epstein, admits the existence and the dissolution of the partnership with his brother, but avers that the settlement of the partnership was not based upon the inventory and appraisement.

He denies that the settlement with his brother, Abraham Epstein, had anything to do with the inventory and appraisement, but that settlement was made with regard to the accounts as shown by the agreement of dissolution.

The answer is silent as to the averment in paragraph 10, of the bill, that there was in existence at the time of the dissolution of the partnership $53,000 of the merchandise belonging to the respondent, which under his instructions, was not included in the inventory and appraisement on which the dissolution of partnership was based.

When the case came on for hearing the record of the trial of the case against the West Chester Fire Insurance Company in Common Pleas No. 2, March Term, 1913, No. 1578, was produced and the testimony of the respondent was offered in evidence.

From the testimony adduced the court makes the following

FINDINGS OF FACTS:

1. Abraham Epstein and Samuel Epstein were partners in business, trading as Epstein Brothers and Progressive Neckwear Company, until July, 1908.

2. On July 31, 1908, Abraham Epstein filed a bill in equity against Samuel Epstein in the Court of Common Pleas No. 3, of Philadelphia County, of June Term, 1908, No. 4588, asking for a dissolution of the partnership.

3. On the 28th day of September, 1908, an agreement was entered into between Samuel Epstein and Abraham Epstein, wherein, for $5,105, consisting of $4,000 in cash and two promissory notes, aggregating $1,105, Abraham Epstein sold, assigned, transferred and set over unto Samuel Epstein, all and every his right, title and interest in and to their joint manufacturing business of ladies' waists, neckwear and other apparel, brands, labels and goodwill, and every and all other matters and things that in any way appertained to the said joint business, whether the interest of said Abraham Epstein is in the City of Philadelphia or located elsewhere.

4. At the time of the said transfer Abraham Epstein was not indebted to any person whatsoever.

5. Subsequently, on, to wit, the 23d day of September, 1911, a petition in bankruptcy was filed against Abraham Epstein, who was later adjudicated a bankrupt, and Abraham Steinfield, the plaintiff herein, was appointed trustee of his estate.

6. In the trial of the case of Samuel Epstein v. West Chester Fire Insurance Company, in the Court of Common Pleas No. 2, of Philadelphia County, of March Term, 1913, No. 1578, Samuel Epstein, the above defendant, testified that, in addition to an inventory which had been prepared at the time of settlement, there was contained in the place of business of the partnership $53,000 worth of merchandise, which he said was being held pending litigation with one Fenkart. That at the

time of the dissolution his brother knew, or should have known, of this stock being there; that he did know that there was such litigation, which involved large figures and grew out of a contract made by the Epsteins, to deliver 100,000 robes to Fenkart, which contract was broken by Fenkart, and that at the time of the dissolution there was a suit actually pending against them for $12,000.

7. Abraham Epstein sold and released unto his brother, without any further consideration, all of the interest that he might have in the Fenkart matter, either in merchandise or results of litigation, in consideration of his brother taking care of the indebtedness which might be due by the partnership to Fenkart, and knew at the time that there was a dispute about the Fenkart matter.

8. The evidence does not disclose that any goods were concealed from Abraham Epstein; all of the evidence shows that the merchandise was in the place of business, easy of access to both parties, and that Abraham Epstein saw all of the merchandise which was in the place.

9. Samuel Epstein did not conceal any merchandise whatsoever, nor did he put out of sight of his brother any of the Fenkart merchandise; all of the merchandise was in the place of business, and Abraham Epstein knew, or should have known, what was in the place at the time of the settlement.

10. The settlement was made after the bill in equity had been filed by Abraham Epstein, and his relations with his brother at that time were strained.

11. There is no evidence before the court to show that Samuel Epstein concealed, or attempted to conceal, any of the merchandise, nor does Abraham Epstein state that he was misled or deceived by Samuel Epstein as to what merchandise was in the place or as to the character of the merchandise in the place, or as to the property of either party at the time of settlement.

12. Both Samuel Epstein and Abraham Epstein had

full and free access to the place of business and the books of the copartnership; each was thoroughly familiar with the stock on hand, and each had the same method of obtaining the same knowledge as to what was contained therein.

13. Abraham Epstein knew of the Fenkart transaction, and had the same method of obtaining information as to the goods which belonged to this transaction as had Samuel Epstein. He released all interest in the Fenkart goods to Samuel Epstein, and Samuel Epstein agreed to take all responsibility for the Fenkart indebtedness.

14. The goods which are the subject of this bill were Fenkart goods, as to which Abraham Epstein stated he had released all claim to any interest therein.

Other facts have been found in answer to requests, but these are the essential ones, and are here repeated in paragraphic form: Pittsburgh Stove & Range Co. v. Penna. Stove Co., 208 Pa. 37.

### CONCLUSIONS OF LAW.

1. The release executed between Samuel Epstein and Abraham Epstein on the 28th of September, 1908, is conclusive against any claim by Abraham Epstein, and cannot be set aside, unless fraud were practiced upon the said Abraham Epstein.

2. At the time that the settlement was made the parties were dealing at arm's length; the settlement was in consequence of a bill in equity for dissolution of partnership, and each of the parties had equal means of knowledge of the assets of the estate.

3. There was no such confidential relation between the parties at the time the agreement was executed as to compel Samuel Epstein to specifically point out the goods which were set aside as the Fenkart goods.

4. Abraham Epstein was not deceived nor defrauded by the settlement made; he knew of the Fenkart trans-

action, and that it was in litigation, and if, as a result of such litigation Samuel Epstein obtained an advantage, that in itself does not constitute fraud, or attempted fraud on the part of Samuel Epstein.

5. While the trustee in bankruptcy succeeds to the rights of the bankrupt as of the time of adjudication, (and under Section 47A (2) of the amendments of the Act of 1910, the rights of a trustee are equal to the rights of a lien creditor) yet, as there were no creditors of Abraham Epstein at the time of the settlement of the affairs of the parties, the trustee's rights do not rise any higher than the bankrupt's at the time of the adjudication.

6. As there were no creditors at the time of the adjustment, neither the trustee in bankruptcy nor the creditors have any right, five years after said adjustment, to come in and attempt to set the same aside except upon account of fraud.

7. There being no evidence before the court that Samuel Epstein deceived, or intended to deceive, his brother, as to the Fenkart goods, nor any evidence that Abraham Epstein was deceived, the bill must be dismissed.

8. As Abraham Epstein had equal opportunity to see what was going on, and as there was no undue means used for the purpose of preventing him from ascertaining the value of the Fenkart goods; and as he was at the time of the settlement a man of sound mind, and had full knowledge of all of the assets of the copartnership, and as the settlement was made without any duress and no fraud was practiced or attempted to be practiced upon him, he is therefore, bound by the assignment and release executed by him on September 28, 1908.

9. The mere fact that Samuel Epstein testified in an insurance case that there was merchandise in the place of business, which had not been included in the inventory does not raise a presumption of fraud, nor of a concealment of goods, especially as the testimony of Abra-

ham Epstein discloses the fact that he had access to the place of business and knew what goods were in the place.

10. The bill must be dismissed with costs.

The court dismissed the bill.   Plaintiff appealed.

*Error assigned,* inter alia, was the dismissal of the bill.

*George P. Rich,* with him *Albert L. Moise,* for appellant.

*Alex. Simpson, Jr.,* with him *Clinton O. Mayer,* for appellee.

PER CURIAM, February 26, 1917:

This appeal is dismissed on the facts found and the legal conclusions reached by the learned chancellor below.

Decree affirmed at appellant's costs.

---

# Weil, Appellant, *v.* Marquis.

*Decedents' estates—Bankruptcy—Insurance policies—Rights of creditors—Power of decedent to change beneficiary—Acts of April 15, 1868, P. L. 103; May 1, 1876, P. L. 53; June 1, 1911, P. L. 581, and May 5, 1915, P. L. 253.*

1. In an action of assumpsit for money had and received to plaintiffs' use it appeared from the statement of claim and affidavit of defense that plaintiff was administratrix of a decedent who died in 1914 intestate and insolvent, that decedent had taken out sundry life insurance policies payable to his wife, with the right of the insured to change the beneficiary; that decedent died without having exercised such right and that his widow collected the insurance money which amounted to much less than his debts. Plaintiff contended that she was entitled to recover from the widow what the latter had received from the insurance companies, and asked judgment for want of a sufficient affidavit of defense for either the amount of the proceeds collected on the policies or the amount of their surrender value immediately before the death of the insured.   *Held,* the court properly discharged the rule.